ROBERT C. BAKER, BAR ID #49255
rbaker@bknlawyers.com
PHILLIP A. BAKER, BAR ID #169571
pbaker@bknlawyers.com
DANIEL P. LEONARD, BAR ID #194268
dleonard@bknlawyers.com
BAKER, KEENER & NAHRA, LLP
633 West 5th Street
Suite 5500
Los Angeles, California 90071
Telephone: (213) 241-0900
Facsimile: (213) 241-0990

Attorneys for Plaintiffs
HRAYR SHAHINIAN, M.D., an individual;
SKULL BASE MEDICAL GROUP, INC., a
California Corporation

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HRAYR SHAHINIAN, M.D., an individual; SKULL BASE MEDICAL GROUP, INC., a California Corporation,<br><br>        Plaintiffs,<br><br>vs.<br><br>THE MEDICAL STAFF OF LOS ROBLES HOSPITAL & MEDICAL CENTER; NATHAN RAMESH, M.D., an individual; THE BOARD OF TRUSTEES OF LOS ROBLES HOSPITAL & MEDICAL CENTER; RICK LEMMO, an individual; NATALIE MUSSI, an individual; LOS ROBLES HOSPITAL & MEDICAL CENTER; and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.:   2:14-cv-09516<br><br>**COMPLAINT FOR DAMAGES:**<br><br>**1. Breach of Contract;**<br>**2. Intentional Interference with Economic Relations;**<br>**3. Negligent Interference with Economic Relations;**<br>**4. Breach of Covenant of Good Faith and Fair Dealing;**<br>**5. Violation of Common Law Right to Fair Procedure;**<br>**6. Unreasonable Restraint of Trade in Violation of the Sherman Act (15 U.S.C. §§ 1 et seq.).**<br><br>**DEMAND FOR JURY TRIAL** |

**COMES NOW**, Plaintiffs HRAYR SHAHINIAN, M.D., an individual and SKULL

BASE MEDICAL GROUP, INC., a California Corporation, on behalf of themselves, and

complain and allege as follows:

///

///

1.     Plaintiff HRAYR SHAHINIAN, M.D. ("Dr. Shahinian"), is a licensed physician residing and practicing medicine in the County of Los Angeles, State of California, within the Central District.

2.     Plaintiff SKULL BASE MEDICAL GROUP, INC. ("SBI"), is a California Corporation, is and was at all times incorporated in the State of California.

3.     Defendants Nathan Ramesh M.D. and the Medical Staff of Los Robles Hospital & Medical Center (the "Staff") is, and at all times herein mentioned was, an incorporated association with its principal place of business in the County of Ventura, State of California.

4.     Defendants Rick Lemmo, Natalie Mussi, and the Board of Trustees of Los Robles Hospital & Medical Center ("Trustees") is, and at all times herein mentioned was, an incorporated association with its principal place of business in the County of Ventura, State of California.

5.     Defendant Los Robles Hospital & Medical Center ("LRHMC") is, and at all times was, an incorporated California subsidiary and/or affiliate of Health Corporation of America, Inc. (HCA), with its principal place of business in the County of Ventura, State of California.

6.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 100, inclusive, and therefore sue these Defendants by such fictitious names.  Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiffs are informed, believe and thereon allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by their conduct.

7.     Plaintiffs are informed and believe that DOES 1 through 100, at all times herein mentioned, were the agents and employees of the Defendant hospital and in doing the things herein alleged were acting within the course and scope of such agency and the permission and consent of their Co-Defendants.

///

///

899-3990-0006

COMPLAINT FOR DAMAGES

**JURISDICTION & VENUE**

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction). In addition, this District is the proper venue under 28 U.S.C. § 1391(b) and (c): Defendants transact business in this District; a substantial part of the events giving rise to this action occurred in this District; Plaintiffs' principal place of business is located in this District; and Plaintiffs suffered and continue to suffer harm in this District.

**FACTUAL BACKGROUND**

9. Dr. Shahinian is a skilled medical doctor, experienced skull base surgeon, and founder of SBI.

10. Dr. Shahinian completed his undergraduate studies at the American University of Beirut in 1981 and earned his M.D. in 1985. He earned both degrees with distinction and has been an active member of the honor medical society, Alpha Omega Alpha.

11. In 1986, Dr. Shahinian was accepted by Vanderbilt University Medical Center, where he completed an internship and residency in general surgery. Five years later, Dr. Shahinian went to New York University's Institute of Reconstructive Plastic Surgery, the premier craniofacial program in the nation. There, Dr. Shahinian completed a two-year fellowship in plastic and reconstructive surgery.

12. After successfully completing the fellowship at New York University, in 1993, Dr. Shahinian completed a fellowship in skull base surgery and neurotology in the Department of Head and Neck Surgery in Zurich, Switzerland under the tutelage of Professor Ugo Fisch, the preeminent skull base surgeon in the world at the time.

13. In 1994, Dr. Shahinian returned to New York University and completed a second fellowship in craniofacial surgery. He was certified by the American Board of Surgery in 1992, recertified in 2003 and 2014, and is a Fellow of the American College of Surgeons since 2002.

///

///

899-3990-0006

COMPLAINT FOR DAMAGES

14.     Since 1994, Dr. Shahinian has pioneered numerous new endoscopic surgical techniques to treat a variety of skull base disorders and is nationally and internationally recognized as one of the first surgeons in the world to use and pioneer endoscopic skull base surgery. Dr. Shahinian is Board Certified by the American Board of Surgery and has been licensed to practice in California since 1996.

15.     In 1996, Dr. Shahinian was recruited by Cedars-Sinai Medical Center to establish and head its Division of Skull Base Surgery and to direct its Skull Base Institute. Dr. Shahinian accepted the offer, relocated to California and was instrumental in establishing what has become one of the country's largest practices specializing in minimally-invasive endoscopic skull base and brain tumor surgery: The Skull Base Institute in Los Angeles.

16.     Moreover, neurosurgeons from the across the United States as well as Barcelona, Marseilles, Brussels, Cairo, Kiev, Rome and Czech Republic have travelled to Dr. Shahinian for observation and training in Skull Base Surgery. Patients from around the world and most of the 50 states routinely travel to Los Angeles to be treated by Dr. Shahinian.

17.     Dr. Shahinian has received numerous awards for his work in skull base surgery and has shared his experience and expertise in numerous journal articles, textbook chapters, and national as well as international presentations. For example, Dr. Shahinian authored the textbook, "Endoscopic Skull Base Surgery," which was originally published by Humana Press in 2009, followed by a Second Edition in 2011 and Chinese translation published that same year.

18.     Dr. Shahinian holds a number of patents and has thrice received the National Aeronautics and Space Administration (NASA) Innovation Award in (2008, 2011 and 2012) for his work in the field of advanced medical technology.

19.     In or around 2008, Dr. Shahinian started practicing skull base surgery exclusively at Thousand Oaks Surgical Hospital. In or around 2012, defendant LRHMC purchased Thousand Oaks Surgical Hospital, and actively insisted that Dr. Shahinian transfer his practice and his entire team to the main campus of Los Robles Hospital. Defendant LRHMC induced and eventually recruited Dr. Shahinian to head a new division within its

Department of Surgery: the Division of Skull Base Surgery (the "Program"). Pursuant to his agreement with Defendant LRHMC, Dr. Shahinian would also assist with the design, development, and promotion of a surgical program for treating skull base disorders—Dr. Shahinian's specialty.

20. From 2012 to 2014, Dr. Shahinian performed skull base surgery exclusively at LRHMC as an active member in good standing with the Staff.

21. In a routine skull base surgical procedure, Dr. Shahinian inserts endoscopic and other micro instrumentation into the patient's skull. While cleanliness and sterilization are critical to all surgical procedures, they are of particular importance with regard to surgery around and involving the brain. As such, the inability of Defendant LRHMC to maintain a sterile surgical environment substantially increased the likelihood of exposing patients to a significant risk of infection. Moreover, Dr. Shahinian was not the only surgeon at LRHMC who frequently utilized the surgical facilities. Surgeons specializing in ENT, neurological and pituitary surgeries, as well as other disciplines, used not only the same facility, but the same equipment as well.

22. The risk of infection to patients increases significantly if, during and after each surgical procedure, a properly sterile environment is not provided *and* maintained.

23. In order to address issues of patient care, Dr. Shahinian voiced his concerns about the operating conditions at LRHMC from time to time as necessary. On multiple occasions, Dr. Shahinian attempted to help LRHMC resolve issues of patient safety and cleanliness. Dr. Shahinian even offered to take responsibility for the proper maintenance of cleanliness and sterility at LRMHC when it came to his patients.[1] Defendants rejected Dr. Shahinian's offer.

///

///

///

---

[1] "I will prevent disease whenever I can, for prevention is preferable to cure." Hippocratic Oath (Modern Version) http://guides.library.jhu.edu/content.php?pid=23699&sid=190964.

899-3990-0006

COMPLAINT FOR DAMAGES

24.     However, these matters concerning proper cleanliness and patient safety were never resolved. In fact, Dr. Shahinian's patients were constantly exposed to bacteria cultured from the skull and brain sites at LRHMC. As a result, Dr. Shahinian continued to notice an increase in postoperative patients who were afflicted by bacterial infections.

25.     Dr. Shahinian was required to once again voice his concern to LRHMC after the Staff neglected to follow Dr. Shahinian's explicit directions in providing several of his patients with proper post-surgical care. Dr. Shahinian specifically requested that the Staff adhere to his instructions, as he was well aware of and sought to minimize the numerous risks involved with providing subpar, postoperative care. Dr. Shahinian's greatest concern was the well-being and good health of his patients.  Thus, he was both frustrated and disappointed after learning that his patient suffered the exact harm Dr. Shahinian sought to avoid.[2]

26.     In the following months, Dr. Shahinian did not notice a change in the policies or procedures of Defendant LRHMC.  Dr. Shahinian did notice, however, that the Staff became increasingly annoyed by and discontent with his inquiries and requests regarding patient care and safety. Instead of assisting Dr. Shahinian in addressing his concerns, Defendants retaliated against Dr. Shahinian.

27.     On June 30, 2014, Defendant LRHMC eliminated the Program in its entirety and withdrew Dr. Shahinian's staff member and clinical privileges.  It is well-established that Dr. Shahinian has a vested property interest in these privileges.[3]

28.     Defendant LRHMC converted  Dr. Shahinian's staff and clinical privileges without cause.  What is more, Defendant LRHMC terminated those privileges without properly notifying Dr. Shahinian of the reasons for doing so.

29.     Defendants have thus far failed to reinstate Dr. Shahinian's member and clinical privileges.

///

---

[2] "I will remember that I do not treat a fever chart, a cancerous growth, but a sick human being, whose illness may affect the person's family and economic stability. My responsibility includes these related problems, if I am to care adequately for the sick." *Id.*

# FIRST CAUSE OF ACTION

## (Breach of Contract– By Plaintiffs Against LRHMC)

30.    Plaintiffs incorporate paragraphs 1 through 29 as though fully set forth herein.

31.    In or around March 2009, Plaintiff Dr. Shahinian and Defendant LRHMC entered into a written Professional Services Agreement ("PSA") attached hereto as Exhibit "A". Pursuant to the PSA, Defendant LRHMC appointed Plaintiff Dr. Shahinian Director of the Program at LRHMC, and he agreed to "furnish medico-administrative services, including Director Services, in support of the Program." (PSA p. 2, ¶ 2.01.)

32.    Plaintiff, Dr. Shahinian performed all covenants, conditions, and promises required of him in accordance with the terms of the PSA and to the extent Plaintiff did not perform all covenants, conditions, and promises, such performance was and is excused by Defendant LRHMC's actions and omissions.

33.    Paragraph 10.02 of the PSA states the following:

"The Medical Staff membership and clinical privileges of Physician and Contractors shall not be affected upon the termination of this Agreement for any reason (including the expiration of the term)."

34.    Defendant LRHMC breached this part of the PSA. Despite the unequivocal language referenced above, Defendant LRHMC withdrew and has not reinstated Plaintiff Dr. Shahinian's member and clinical privileges. Defendant LRHMC effectively deprived Dr. Shahinian of property interests directly relating to the pursuit of his livelihood.[4]

35.    As a proximate result of LRHMC' conduct, Plaintiffs' surgical patients suffered inconvenience, monetary loss, and emotional distress, thereby adversely impacting the professional reputation of Plaintiff. Further, as a proximate result of LRHMC' conduct, Plaintiffs have suffered loss of income and damages to professional reputations by virtue of not being able to promote Plaintiffs' affiliation with LRHMC.

---

[3] *See Mileikowsky v. West Hills Hosp. and Medical Center* 45 Cal.4th 1259, 1267 (2009); *Anton v. San Antonio Comm. Hosp.* 19 Cal.3d 802, 824-25 (1977).
[4] *Mileikowsky*, 45 Cal.4th at 1267.

36.     Plaintiffs assert that these losses are ongoing and are directly related to the aforementioned actions of LRHMC.

37.     As a proximate result of LRHMC's conduct and its impact on the professional relationship between Plaintiffs and their patients, Plaintiffs have suffered damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### (Intentional Interference with Economic Relations – By Plaintiffs Against All Defendants)

38.     Plaintiffs incorporate paragraphs 1 through 37 as though fully set forth herein.

39.     Defendants knew of the contractual relationships existing between Plaintiffs and their scheduled patients pursuant to which Dr. Shahinian would perform surgical procedures by exercising his member and clinical privileges at LRHMC.

40.     Plaintiffs are informed, believe and thereon allege that Defendants through their own acts and omissions attempted to impair and damage Plaintiffs by, among other matters, willfully and purposely withdrawing Dr. Shahinian's member and clinical privileges, and that such acts and omissions were a result of Dr. Shahinian voicing his concerns regarding patient safety.

41.     Plaintiffs are informed, believe, and thereon allege that Defendants intentionally and willfully violated its statutory duty pursuant to Business & Professions Code § 809 et seq.[5] Particularly, Defendants violated section 809.5.  That section mandates that a physician's hospital privileges may be summarily suspended only by a "peer review body" or by a hospital administrator, but only if the peer review body is unavailable to act.[6] If by suspended by hospital administrator, the peer review body must ratify the action of the hospital administrator within two working days.  These requirements under section 809.5 *cannot* be waived.

///

///

---

[5] All further statutory references are to the Bus. & Prof. Code unless stated otherwise.
[6] *Id.*; *see also Nicholson v. Lucas*, 21 Cal. App. 4th 1657, 1666 (1994).

899-3990-0006

42.     In direct derogation of section 809.5, Defendants summarily and unilaterally prohibited Dr. Shahinian's ability to practice his profession and care for his patients. What is more, Defendants actions exemplify the type of conduct that California's legislature intended to eliminate[7] by codifying the common law right to a "fair hearing."[8]

43.     As a proximate result of Defendants' conduct and the impact on the professional relationship between Plaintiffs and their patients, Plaintiffs have suffered damages in an amount to be proven at trial. As a proximate result of Defendants' conduct, Plaintiffs' surgical patients suffered inconvenience, monetary loss, emotional distress, thereby adversely impacting the professional reputation of Plaintiffs. Further, as a proximate result of Defendants' conduct, Plaintiffs have suffered a loss of income and damage to their professional reputations by virtue of not being able to promote Plaintiffs' affiliation with LRHMC. Plaintiffs assert that these losses are ongoing and are directly related to the aforementioned actions of Defendants.

44.     The aforementioned acts of Defendants, and each of them, were willful and malicious. Therefore, Plaintiffs are entitled to punitive damages. More importantly, this matter is one that demands the imposition of punitive damages against Defendants, and each of them. Dr. Shahinian was concerned about patient safety and voiced his concerns to Defendants regarding the infectious and unsterile environment that led to contamination and infection problems within the Program. Dr. Shahinian was also concerned that Defendants were not providing his patients with appropriate post-surgical care. Rather than addressing Dr. Shahinian's valid concerns, Defendants eliminated the Program.

///
///
///
///

---

[7] "Peer review, fairly conducted, is essential to preserving the highest standards of medical practice." Bus. & Prof. Code, § 904, subd. (a)(3). "Peer review that is not conducted fairly results in harm both to patients and healing arts practitioners by limiting access to care. *Id.* (a)(4)."

[8] *See Wyatt v. Tahoe Forest Hospital Dist.*, 174 Cal.App.2d 709, 715 (1959).

45.     Defendants withdrew Dr. Shahinian's member and clinical privileges, despite knowing that hospital privileges "are especially important for specialists, like surgeons, who perform the majority of their services in a hospital setting.  For this reason, a hospital's decision to deny membership or clinical privileges, or to discipline a physician, can have an immediate and devastating effect on a practitioner's career."[9]

46.     Defendants have therefore disrupted business relationships between Plaintiffs and their  patients, both present and future, to Plaintiffs great irreparable injury.  In this matter, general damages would not afford Plaintiffs adequate relief in compensating the irreparable harm inflicted upon Plaintiffs' business reputation and goodwill.  Thus, punitive damages are warranted.

## THIRD CAUSE OF ACTION

(**Negligent Interference with Economic Relations – By Plaintiffs Against All Defendants**)

47.     Plaintiffs incorporate paragraphs 1 through 46 as though fully set forth herein.

48.     Defendants knew of the contractual relationships existing between Plaintiffs and their various patients, in that Dr. Shahinian was granted member and clinical privileges at LRHMC.

49.     Defendants knew or should have known that withdrawing Dr. Shahinian's member and  clinical privileges would inevitably interfere with Plaintiffs' contractual and business relationships with various patients.  Defendants nonetheless withdrew and have not reinstated Dr. Shahinian's said privileges.

50.     Plaintiffs are informed, believe and thereon allege that Defendants through their own acts and omissions attempted to impair and damage Plaintiffs by, among other matters, willfully and purposely withdrawing Dr. Shahinian's member and clinical privileges, and that such acts and omissions were a result of Dr. Shahinian voicing his concerns regarding patient safety.

---

[9] *Mileikowsky*, 45 Cal.4th at p. 1268 (citing Merkely, *Physicians Policing Physicians: The Development of Medical Staff Peer Review Law at California Hospitals* (2003) 38 U.S.F. L.Rev. 301, 302–303).

899-3990-0006

51.     As a proximate result of Defendants' conduct and the severance of the business relationships between Plaintiffs and their patients, Plaintiffs have suffered damages in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION

**(Breach of Implied Covenant of Good Faith and Fair Dealing –
By Plaintiffs Against LRHMC)**

52.     Plaintiffs incorporate paragraphs 1 through 51 as though fully set forth herein.

53.     California law implies a covenant of good faith and fair dealing in all contracts between parties entered into in the State of California.

54.     As a result of the actions of Defendants, and each of them, set forth hereinabove, said Defendants have violated the implied covenant of good faith and fair dealing contained in the PSA agreement as against said Plaintiffs herein, and as a result thereof, Plaintiffs have been damaged and are entitled to damages in an amount to be proven at the trial of this matter.

55.     Claimants are informed, believe and thereon allege that Defendants through their own acts and omissions attempted to impair, damage, and deny Plaintiffs the rights to which they are entitled pursuant to the PSA by, among other matters, improperly withdrawing Dr. Shahinian's member and clinical privileges.

56.     As a proximate result of Defendants' conduct and the impact on the professional relationship between Plaintiffs and their patients, Plaintiffs have suffered damages in an amount to be proven at trial.  As a proximate result of Defendants' conduct, Plaintiffs' surgical patients suffered inconvenience, monetary loss, and emotional distress, thereby adversely impacting the professional reputation of Plaintiffs.  Further, Plaintiffs have suffered a loss of income and damage to professional reputations by virtue of not being able to promote Plaintiffs' affiliation with LRHMC as a proximate result of Defendants' conduct.  Plaintiffs assert that these losses are ongoing and are directly related to the aforementioned actions of Defendants.

///
///

57. The aforementioned acts of Defendants, and each of them, were willful and malicious. Therefore, Plaintiffs are entitled to punitive damages. More importantly, this matter is one that demands the imposition of punitive damages against Defendants, and each of them. Dr. Shahinian was concerned about patient safety and voiced his concerns to Defendants regarding the infectious and unsterile environment that led to contamination and infection problems within the Program. Dr. Shahinian was also concerned that Defendants were not providing his patients with appropriate post-surgical care. Rather than addressing Dr. Shahinian's valid concerns, Defendants willfully and maliciously eliminated the Program and withdrew Dr. Shahinian's member and clinical privileges in direct violation of the implied covenant of good faith and fair dealing.

## FIFTH CAUSE OF ACTION

**(Violation of Common Law Right to Fair Procedure –
By Plaintiffs Against All Defendants)**

58. Plaintiffs reincorporated paragraphs 1-57 as though fully set forth herein.

59. In closing the Program at LRHMC, Defendants intended to retaliate against Dr. Shahinian—and only Dr. Shahinian— for repeatedly voicing his concerns regarding the unsterile environment at LRHMC and the safety of his patients. Defendants' conduct was therefore adjudicative in nature.

60. Defendants' decision to close the Program was arbitrary, capricious, and unreasonable. What is more, Defendants have not provided an adequate or reasonable justification for closing the Program. Admittedly, it may be difficult to do so when, during his time at LRHMC, Dr. Shahinian was in good standing with the Staff, and he excelled in managing and overseeing the development and successful growth of the Program. Most importantly, Dr. Shahinian consistently provided cost effective, quality patient care.

///
///
///
///

899-3990-0006

61.     By closing the Program, Defendants effectively terminated the "hospital privileges" of Dr. Shahinian, thus depriving him of property rights inextricably linked to the "pursuit of his livelihood."[10] These privileges "vest upon appointment, subject to divestment upon periodic review only after a showing of adequate cause for such divestment in a proceeding consistent with minimal due process requirements."[11]

62.     Defendants possessed no adequate or justifiable cause for divesting Dr. Shahinian of his full rights of staff membership. Accordingly, instead of subjecting Dr. Shahinian to an adjudicatory peer-review proceeding, Defendants cleverly avoided that requirement by closing the Program in its entirety.

63.     As a proximate result of Defendants' conduct, Plaintiffs have suffered damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

**(Unreasonable Restraint of Trade in Violation of the Sherman Act: 15 U.S.C. §§ 1 et seq. – By Plaintiffs Against All Defendants)**

64.     Plaintiffs reincorporate paragraphs 1-63 as though fully set forth herein.

65.     Defendants purchased and used, as well as authorized the purchase and use of, equipment and supplies from out of state. Moreover, *nationwide* insurance carriers pay a substantial portion of the costs of Defendants' services. Defendants participate in and affect interstate commerce.

66.     Defendants contracted, combined and conspired with one another and others, including but not limited to LRHMC, the Staff, Nathan Ramesh, Rick Lemmo, Natalie Mussi, the Board of Trustees, and its corporate parent HCA to arbitrarily terminate the Skull and Base Division, preventing Dr. Shahinian from providing care to both his in-state and out-of-state patients, and thus unreasonably restricted trade. In fact, 90 percent of Dr. Shahinian's patients do not reside in the state of California, but travel from other States to seek his care.

[10] *Major v. Mem'l Hospitals Assn.*, 71 Cal.App.4th 1380, 1398 (1999) (quoting *Anton v. San Antonio Community Hospital* (1977) 19 Cal.3d 802, 823).
[11] *Anton*, 19 Cal.3d at 824-25.

899-3990-0006

COMPLAINT FOR DAMAGES

67.     Defendants also contracted, combined and conspired with one another and others to exclude Dr. Shahinian from the market for neurosurgery and endoscopic skull base surgery by terminating the Program, effectively preventing Dr. Shahinian from offering his services in the free market. Defendants excluded Dr. Shahinian not only from the market for skull base surgery services in Los Angeles, but also in all of California and across the several States.

68.     Dr. Shahinian's work for Defendants was a business for antitrust purposes, and Defendants' decision to terminate the Program caused injury to that business for which Dr. Shahinian has no remedy. Thus, by reason of Defendants' unlawful actions and unreasonable restraint of trade, and as a direct and proximate result of those actions, Dr. Shahinian has been injured in his business and property. More importantly, Defendants have deprived the public of free and open competition for minimally invasive, endoscopic skull base surgery services.

69.     Minimally invasive endoscopic skull base surgery is a relatively new but rapidly developing field of medicine. Like any developing field, competition amongst the new participants and entrants will promote progress and new ideas while benefiting the public. Accordingly, "the competitive significance" of Dr. Shahinian's exclusion "from the market must be measured, not just by a particularized evaluation of his own practice, but rather, by a general evaluation of the impact of the restraint on other participants in the market from which he has been excluded." [12]

70.     By conspiring together and arbitrarily deciding to terminate the Program, Defendants restricted Dr. Shahinian's ability to practice in the Los Angeles area and care for his out-of-state patients. Defendants intended to stifle competition and take control of the market for skull base surgery to become the sole option for patients in need of such care. In fact, HCA manages approximately "165 hospitals and 115 free standing surgery centers in 20 states." [13]

---

[12] *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 332 (1991), *affg. in part and revg. in part Pinhas v. Summit Health, Ltd.* 894 F.2d 1024 (9th Cir. 1989).
[13] HCA Healthcare, *About Our Company*, http://www.hcahealthcare.com/about/ (last visited Nov. 17, 2014).

899-3990-0006

COMPLAINT FOR DAMAGES

71.     Dr. Shahinian has suffered damages cognizable under the Sherman Act as a direct and  proximate cause of Defendants' conduct.

**WHEREFORE**, Plaintiffs prays for judgment against Defendants, and each of them, as follows:

### As to the First Cause of Action

1.     For damages according to proof;

2.     For interest according to proof;

3.     For cost of suit incurred;

4.     For attorneys' fees pursuant to the PSA; and

5.     For such other and further relief as this court may deem just and proper.

### As to the Second Cause of Action

1.     For damages according to proof;

2.     For interest according to proof;

3.     For cost of suit incurred;

4.     For punitive damages; and

5.     For such other and further relief as this court may deem just and proper.

### As to the Third Cause of Action

1.     For damages according to proof;

2.     For interest according to proof;

3.     For cost of suit incurred; and

4.     For such other and further relief as this court may deem just and proper.

///

///

///

///

///

///

899-3990-0006

**As to the Fourth Cause of Action**

1.      For damages according to proof;

2.      For interest according to proof;

3.      For cost of suit incurred;

4.      For attorneys' fees pursuant to the PSA; and

5.      For such other and further relief as this court may deem just and proper.

**As to the Fifth Cause of Action**

1.      For damages according to proof;

2.      For interest according to proof;

3.      For cost of suit incurred; and

4.      For such other and further relief as this court may deem just and proper.

**As to the Sixth Cause of Action**

1.      For damages according to proof,

2.      For interest according to proof;

3.      For cost of suit incurred;

4.      For such other and further relief as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs HRAYR SHAHINIAN, M.D., an individual and SKULL BASE MEDICAL GROUP, INC., a California Corporation hereby demands trial by jury in this action.

DATED: December 11, 2014        BAKER, KEENER & NAHRA

By     */S/ PHILLIP A. BAKER*
         ROBERT C. BAKER
         PHILIP A. BAKER
         DANIEL P. LEONARD
Attorneys for Plaintiffs,
HRAYR SHAHINIAN, M.D. an individual,
and SKULL BASE MEDICAL GROUP,
INC., a California Corporation.